Ex parte Eduardo Urrutia Martorell, Petitioner. Ex parte Antonio Escalera, Petitioner.

Nos. 33A and 66. Argued March 31, 1932.—Decided July 29, 1932.

*E. Urrutia Martorell, pro se. Juan Lastra* for petitioner Escalera. *Juan B. Soto, C. del Toro Fernández,* and *I. Soldevila* for the Bar Association of Puerto Rico.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

Eduardo Urrutia and Antonio Escalera secured the passage by the Legislature of Puerto Rico of two Joint Resolutions—Nos. 58 and 69 of 1931, Sess. Laws, pp. 1014 and 1050—authorizing them to take an examination for admission to the practice of law before the Supreme Court. Both filed their petitions for examination which were opposed by several attorneys on the ground that the resolutions were unconstitutional in that they in effect denied the equal protection of the laws to future applicants.

After all the interested parties were heard, the Court overruled the objections to the constitutionality of the legislative enactments, and in order to better discharge its functions, it set another hearing so that the petitioners might introduce new evidence and the opposite parties be given an opportunity

to cross-examine any witnesses presented by the petitioners. The order of this Court was based on the opinion which appears on pages 160 *et seq.* of this volume. The second hearing was held, and the cases are now before us for final decision.

The Joint Resolutions in question refer to *"exámenes de reválida)* (examinations for admission). *"Reválida"* is the act and effect of *"revalidarse,"* and *"revalidarse"* is to be accepted or admitted into a faculty by a superior tribunal.

In the curricula of the Spanish universities the study of law was divided into courses, each course comprising several subjects, of which some extended to two courses. After the student had qualified in all the subjects through examination by personally attending the classes in the university, or by studying privately and only appearing at the university at stated times when examinations were to be held, he still had, in order to secure his degree, to pass another general examination which was known as *"examen de reválida"* (for admission). Subsequent to the change of sovereignty in the Island, the home-study of law for admission to the bar was authorized, and the various subjects to be studied were prescribed by law. The test of proficiency consisted in examinations held before a board composed of judges and practitioners under the direction of the Supreme Court. At present, said examinations are held in accordance with the rules prescribed by the University of Puerto Rico, which is an institution created and supported by the Government.

The holders of diplomas issued by accredited American universities were also authorized to take a general oral examination before said board. If they were successful in the examination, they were admitted to practice before the courts of this island. This method is still followed and the examination so taken has been and is called *"examen de reválida"* (examination for admission to the bar).

Have the petitioners herein complied with the requirement as to the presentation of a diploma from an educational insti-

tution? Urrutia presented a diploma issued by the Chicago School of Law showing that he had taken and passed the law course given in that college. Escalera presented a diploma issued by the Hamilton College of Law. Neither of said diplomas would have entitled the petitioners to apply for the examination for admission to the bar (*reválida*) prescribed by law, since the same were obtained through correspondence courses. That is why they applied to the Legislature for the enactment of special legislation.

The practice is not to be encouraged. Statutes granting special privileges always create in the mind a sense of protest. They are justified only in cases that are really extraordinary. In Puerto Rico the obtention of a license to practice law is open to all its citizens. Confining ourselves to those who reside in the Island, they have two methods at their disposal, to wit: (1) by personally attending the classes at the university where they may study under the direction of competent professors and qualify on the subjects in each course through examination in accordance with courses of studies and rules of the university; or (2) by passing such examinations periodically and studying privately or under the direction of instructors or competent persons selected by the student himself.

An examination of the statutes on the subject now or formerly in force in the Island shows a steady tendency to be more exacting each time, not only as regards the legal studies themselves but especially regarding preparatory courses. At first, there were no requirements on this point. Subsequently completion of the 8th grade was required, then a high school diploma became necessary, and at present some subjects leading to the degree of Bachelor of Arts must be passed; and the idea is being put forward that the study of law should be commenced after the completion of the course for such degree, as is customary in Spain and other European countries and is gradually being required in the best reputed American universities.

If there is a profession which requires preparatory studies for proficient practice, it is indeed the legal profession. Life is becoming each day more and more strenuous and complex; laws are multiplied and they cover all sorts of juridical relationships, some of them entirely new, and it devolves upon the lawyer to solve the problems thereby created. Laws are formulas, precepts, which it is not enough to know textually. Behind those formulas and precepts are the experience of centuries, the conquest of civilization, the incessant efforts of humanity towards a higher and better life which crystallized in them. That is why in order to enter into their spirit and to be able to apply them properly, it is necessary to have a previous knowledge of human nature, of man and human society, and of the progress of science, at least of its fundamental principles. The grammar school, the high school, and the college admirably prepare the mind which will later apply itself to the special study of the law.

The Legislature of Puerto Rico has acted justly. It has legislated in accordance with the prevailing contemporary conditions. The facilities granted at first were justified. As the educational system established by it has gradually yielded its fruit, it has increased the requirements until it will doubtless reach a standard which will be in keeping with the high degree of progress attained. The number of young men and women who graduate annually from high school is no longer 10 or 100. There is already a well prepared group, so large that it may well supply all the raw material that must be developed to fill the ranks of the highest professions. If the Legislature preserves, as it has preserved and should always preserve, the system of private tuition, and if the government university, in recognition of the great social function and high spirit of justice underlying said private tuition does not render its existence impossible, there will be gradually less justification for the enactment of special or discriminative statutes regarding the admission of candidates for the practice of the law.

Let us consider, in the light of the above principles and of the law as it now stands, the attendant circumstances of the present cases.

We have already stated that both candidates hold the degree of Bachelor of Laws obtained by correspondence. Urrutia, moreover, is a high-school graduate and filled for many years the office of marshal of the District Court of San Juan where he showed proficiency in important legal matters on various questions. Several prominent members of the bar testified in laudatory terms regarding his intelligence, general knowledge, and ability. We will only quote in part the tes- timony of Attorney Luis Llorens Torres, thus:

"I am rather well acquainted with him. I have observed his work during eight or ten years while he filled the office of marshal of the District Court of San Juan. I know that while he was the marshal of that court he studied civil law, mortgage law, . . . . . From conversations and discussions between us, I have noticed, not now but for the last three or four years, that he is a cultured man besides being a high-school graduate, well learned in history, philos- ophy, constitutional law. He has called at my office on many occasions while he was a marshal of the district court, and subse- quent thereto in order to hold consultations on legal questions and to discuss them with me. I have noticed that he is a man of culture, and it is my opinion that he is an intelligent man, who is a high- school graduate and possesses general culture, has filled the office of marshal for eight years and has studied law, hearing the best lawyers in court. Such a man has had a better training than any other student in Puerto Rico."

As to Escalera, the evidence was very deficient. In the second recital (*por cuanto*) of Joint Resolution No. 69 are stated the reasons that led the Legislature to act as it did, thus: "WHEREAS, Since the said year 1909, Antonio Escalera had devoted himself to the practice of law in various offices of lawyers, admitted to the bar by the Supreme Court of Porto Rico, either by studying cases, drafting pleadings in all kinds of suits, petitions in *ex parte* proceedings, special reme- dies and briefs in cases on appeal before the Supreme Court

of Porto Rico, or by taking part in consultations, or deciding important administrative and contentious questions, to the satisfaction of the lawyers with whom he worked;'' and this indeed was not satisfactorily established by the evidence which was submitted to the Court by the petitioner and which is attached to the record.

Moreover, the Court had ample opportunity to judge the petitioners personally. Urrutia showed his ability in the way he conducted his case. In his statements Escalera seemed to exhibit unacquaintance with judicial practice and with the law.

After hearing the evidence, we have entertained no doubt as to the only decision to be rendered in the case of Escalera. We can not grant his petition. Regarding Urrutia we have had some doubt as to whether his case is really such an extraordinary one as to justify the privilege involved in Joint Resolution 58 of 1931; and we have finally decided to solve the doubt in his favor.

Therefore, the petition of Urrutia will be granted and he will be admitted to examination in November next, the board of examiners to be notified of the circumstances of his case, so that his examination will be as thorough as such circumstances demand; and the petition of Escalera will be denied.

Mr. Justice Córdova Dávila took no part in the decision of this case.